Jennifer Seraphine (Cal Bar. No. 245463)
(seraphine@turnerboyd.com)
TURNER BOYD LLP
2570 W. El Camino Real
Suite 380
Mountain View, California 94040
Telephone: (650) 521-5930
Facsimile: (650) 521-5931

Todd M. Malynn (Cal. Bar No. 181595)
(tmalynn@feldmangale.com)
FELDMAN GALE, P.A.
Promenade West
880 W 1st Street, #315
Los Angeles, California 90012
Telephone: (213) 625-5992
Facsimile: (213) 625-5993

*Attorneys for Plaintiff Ripple Labs, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RIPPLE LABS, INC., F/K/A OPENCOIN, INC., A CALIFORNIA CORPORATION, <br><br> Plaintiff, <br><br> vs. <br><br> LACORE ENTERPRISES, LLC, A TEXAS LIMITED LIABILITY COMPANY; RIPPLN, INC., A TEXAS CORPORATION; AND TERRY LACORE, AN INDIVIDUAL, <br><br> Defendants. | Case No. 3:13-cv-5974 <br><br> **COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND CYBERSQUATTING** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Ripple Labs, Inc. f/k/a OpenCoin, Inc. ("Ripple Labs"), as its complaint against Defendants LaCore Enterprises, LLC ("LaCore"), Rippln, Inc. ("Rippln"), and Terry LaCore, individually, ("Mr. LaCore") (collectively, the "Defendants"), alleges, as follows:

### NATURE OF THE ACTION

1. This is an action seeking injunctive relief and damages arising from the Defendants' violation of the Lanham Act, the Anticybersquatting Consumer Protection Act ("ACPA"), California's unfair competition statute (California's Business and Professions Code section 17200), and common law unfair competition.

### PARTIES, JURISDICTION AND VENUE

2. Plaintiff Ripple Labs is a California corporation residing in and having a principal place of business in San Francisco, California.

3. Defendant LaCore is a Texas limited liability company residing in and having a principal place of business in Melissa, Texas.

4. Defendant Rippln is a Texas corporation residing in and having a principal place of business in Melissa, Texas.

5. Defendant Mr. LaCore is an individual residing in Texas.

6. This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338.

8. This Court also has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) & (3).

10. The Court may properly exercise personal jurisdiction over the Defendants because Defendants have personally availed themselves of the benefits and protections of the State of California and Ripple Labs' claims arise out of Defendants' contacts with the State of California. Defendants also maintain, as a registrant and administrative contact, the domain names www.rippln.com and www.startmyripple.com, which use the marks RIPPLE and RIPPLN and direct California consumers to enlist Defendants' services.

## GENERAL ALLEGATIONS

### Plaintiff Ripple Labs and the RIPPLE Trademark

11. For many years, Ripple Labs has developed, maintained, and operated a hugely successful currency exchange service that provides on-line, real-time currency trading and cash management.

12. Specifically, Ripple Labs facilitates the transfers of electronic cash equivalents and provides virtual currency exchange transaction services for transferrable electronic cash equivalent units having a specified cash value.

13. Ripple Labs is the exclusive owner of all rights, title, and interest in U.S. Trademark No. 4,453,543 for the word mark "RIPPLE" for "Financial services, namely, providing secure payment options to members of an online community via a global computer network through the use of traditional currency and virtual currency" in international class 036, and U.S. Trademark No. 4,453,376 for the word mark "RIPPLE COMMUICATIONS" for "Financial services and financial transaction services, namely, providing secure commercial transactions and payment options" in international class 036, as well as any and all common law rights and goodwill associated therewith (collectively referred to herein as, the "RIPPLE Trademark"). Attached hereto as Exhibit 1 are true and correct copies of the Certificates of Registration for U.S. Trademark Nos. 4,453,543 and 4,453,376, both of which issued on December 24, 2013 only days prior to the filing of this action.

14. Under its RIPPLE Trademark, Ripple Labs offers services whereby individuals can create, credit, and disburse money—both real and virtual—to people within a peer-to-peer social network. This service acts as an alternative to the current on-line currency exchange services presently in existence by offering a truly decentralized exchange service and also provides a platform by which individuals may grant or extend credit to one another. Essentially, the credit created under the RIPPLE Trademark has become a new form of digital currency.

15. Ripple Labs also owns all rights, title and interest in and to the URL domain names http://www.ripple.com, http://www.ripple-project.org, and http://www.ripplepay.com and all goodwill associated thereto.

16. By virtue of continuous and extensive use, the RIPPLE Trademark has acquired substantial goodwill.

17. Ripple Labs and its predecesors have continuously used and extensively promoted the RIPPLE Trademark since at least 2004. Ripple Labs has expended a tremendous amount of time, effort and money to continuously and widely advertise and promote its currency exchange services under the RIPPLE Trademark, including but not limited to Bloomberg, various trade shows, Ripple Labs' website, third-party websites, and through social media outlets such as Facebook. As a result, the RIPPLE Trademark has become widely recognized among the consuming public of the United States as a trusted service offered by Ripple Labs.

18. Ripple Labs' success has attracted unscrupulous infringers that are anxious to capitalize on the popularity of its RIPPLE Trademark.

**Defendants and Their Wrongful Conduct**

19. Long after Ripple Labs and its predecesors established rights and goodwill in connection with the RIPPLE Trademark, Defendants commenced adopted the confusingly similar mark RIPPLN for its services.

20. The Defendants—using both the nearly-identical mark RIPPLN and identical mark RIPPLE ("the Infringing Marks")—provide network marketing services, whereby Defendants compensate users monetarily and through value equivalents in the form of Defendants' own currency in connection with Defendants' social networking platform. Additionally, Defendants provide advertisement opportunities to third parties, and offer a payment system for sharing applications under the Infringing Marks.

21. Defendants have used and continue to use the Infringing Marks in connection with one or more online platforms operated by the Defendants at the following websites: www.rippln.com, www.startmyripple.com and www.ripplncommunicator.com (collectively, the "Infringing RIPPLN Websites").

22. Defendants operate and control the Infringing RIPPLN Websites and use of the Infringing Marks.

23. Defendants now interchangeably use their RIPPLN mark in conjunction with the term

RIPPLE in relation to many of their activities.

24. The Infringing RIPPLN Websites describe the following services offered by the Defendants under the Infringing Marks: "bring[ing] long-over due transparency to the social engagement business and has created a new monetary model for 'eyeball acquisition.'"

25. Defendants' registration and use of the Infringing RIPPLN Websites constitutes cybersquatting with bad faith intent to profit from such use.

26. In furtherance of Defendants' scheme to unfairly and illicitly capitalize off of the goodwill and reputation of Ripple Labs' RIPPLE Trademark, Defendant LaCore filed U.S. Trademark App. Ser. No. 85/758,124 on an intent-to-use basis for the mark RIPPLN (the "'124 application"). The '124 application seeks registration in International Class 035, and more specifically, in connection with "Network marketing, namely, business marketing services." Ripple Labs initiated an opposition proceeding before the USPTO opposing the RIPPLN mark in view of its confusing similarity with the RIPPLE Trademark. The opposition proceeding before the USPTO is still pending.

27. LaCore also filed U.S. Trademark App. Ser. No. 85/758,099 on an intent-to-use basis for the mark RIPPLN (the "'099 application"). The '099 application seeks registration in International Class 042 in connection with "Computer services, namely, hosting electronic facilities for others … creating an on-line community for registered users to organize groups, events, participate in discussions, share information and resources … form virtual communities, and engage in social networking featuring social media .…" Ripple Labs initiated an opposition proceeding before the USPTO opposing the RIPPLN mark in view of its confusing similarity with the RIPPLE Trademark. The opposition proceeding before the USPTO is still pending.

28. At some point after filing its Intent to Use applications for its RIPPLN marks, Defendants began using both RIPPLN and, knowingly, Plaintiff's RIPPLE Trademark on their websites.

29. Defendants also offer a payment system for sharing applications under the Infringing Marks.

30. Defendants' infringing services are calculated to and actually do deceive consumers

about the source and quality of the services Defendants offer.

31. Defendants and their Infringing Marks have also been associated with substantial negative press. Several websites and blogs have characterized the Defendants' application as a "scam" and a "scheme."

32. As a result, Defendants are harming consumers and irreparably damaging the goodwill associated with Ripple Labs and Ripple Labs' RIPPLE Trademark.

33. By using the Infringing Marks to promote their untrustworthy services, Defendants are irreparably damaging the goodwill associated with the RIPPLE Trademark.

## There is Significant Evidence of Actual Confusion

34. Recently, there have been numerous instances of actual confusion caused by Defendants' use of RIPPLN and RIPPLE.

35. On one occasion, Ripple Labs' CEO and Co-Founder Mr. Larsen was approached by an acquaintance at his son's soccer game who received an invitation to join the Infringing RIPPLN Websites, and was under the impression that Ripple Labs and Mr. Larsen were associated with the Defendants' social networking platform. The user signed up for the Infringing Rippln Website, solely because he thought it was associated with Ripple Labs and Mr. Larsen.

36. Mr. Larsen was also approached by his personal trainer, Milton Quining. Mr. Quining informed Mr. Larsen that his daughter got the invitation for "Ripple" and "signed right up." In fact, Mr. Quining's daughter had signed up for the Rippln service—not for Ripple Labs' service—because she was under the impression that it was associated with Ripple Labs and Mr. Larsen.

37. Thereafter, on April 26, 2013, users communicating on a Bitcoin Talk Forum were similarly under the impression that RIPPLE and RIPPLN were associated with one another, and were under the false impression that users needed an invitation to take advantage of RIPPLE services, as they did with the RIPPLN service. It wasn't until a Ripple Labs employee corrected the users, that they realized the two services were unaffiliated.

38. Thereafter, on May 10, 2013, Alan Safahi, founder and CEO of ZipZap, Inc. and a business colleague of Mr. Larsen's, contacted Mr. Larsen to inquire whether he was familiar with the

website www.startmyripple.com, and further informed Mr. Larsen that his clients were confused about the relationship between the parties.

39. On May 11, 2013, in a discussion board called RippleForum on Ripple Labs' website, one user inquired about the relationship between RIPPLE and RIPPLN, and if they were one in the same. Another RIPPLE user corrected the confusion, noting that the two were "completely unaffiliated" and added:

> … It's easy to mix the two up for newcomers I think some of the people who got hyped about Rippln will stumble upon Ripple, which might be a beneficial side effect; Ripple is mostly know by BTC [Bitcoin] enthusiasts for now. I just hope there won't be too much confusion and that the two will become distinguishable….

40. Similarly on another discussion forum, www.wickedfire.com, an additional instance of actual confusion occurred, wherein one user explains to the other the difference between the two services:

> "Rippln" and "Ripple" are two different things. "Rippl**e**" is meant to be a virtual currency gateway that is due to launch, that allows you to exchange BTC [bitcoin] for fiat or whatever you want. That's what's been incorporated into Bitstamp. "Rippl**n**" is a pyramid ponzi scheme. One is trading on the other's name to attract members....

41. Instances of actual confusion are also evident on the blog article, "Underneath the Slimy Ripples of RIPPLN," wherein the author accuses Defendants' operation as being a "sleazy pyramid scheme." A commentator on the blog interjects its criticisms of the RIPPLE Trademark under the assumption that the site was a discussion forum that was somehow affiliated with Ripple Labs. In fact, the article and accompanying criticism is dedicated to a discussion of Defendants' services and confusingly similar Infringing Marks.

42. Recently, there was an additional documented instance of actual confusion on the forum site, www.FinanzaOnline.com. The conversation in the forum appears in Italian, but, in short, one user had to clarify the difference between RIPPLE and RIPPLN because there was confusion amongst the users.

43. Yet another instance of actual confusion occurred on the website www.upriser.com wherein one user recognizes the two as technically different, but insinuates both are scams given RIPPLN's reputation:

> Very strange that they chose the name Rippln. There is a Bitcoin type currency called Ripple that gets a lot of the same type scam insinuations. I am not a fan of Ripple and do not use social media enough to make a judgement [sic] on Rippln but I also do not believe in coincidence. I would use caution with both Ripples. :)

44. In view of the foregoing examples, it is both abundantly clear and unfortunate that actual confusion between the Infringing Marks and Ripple Labs' RIPPLE Trademark is rampant.

45. Ripple Labs has performed all conditions precedent that have not been otherwise waived or excused.

### COUNT I: FEDERAL TRADEMARK INFRINGEMENT
### PURSUANT TO 35 U.S.C. § 1114

46. Ripple Labs repeats and re-alleges the allegations in paragraphs 1-46 as if set forth fully herein.

47. Defendants' use of the Infringing Marks infringe upon Ripple Labs' superior rights in the federally registered RIPPLE Trademark.

48. Defendants have knowingly and without the consent of Ripple Labs used the Infringing Marks in commerce in connection with the sale, offering for sale, distribution, and/or advertising of its services, and such activities are likely to cause confusion or mistake, or to deceive consumers in the United States.

49. Defendants' infringing acts include but are not limited to the distribution of advertising bearing the Infringing Marks; the promotion of services bearing the Infringing Marks on one or more internet websites; the use of the websites themselves; and the direct, indirect, or cooperative offering of services bearing the Infringing Marks in the United States.

50. Under the circumstances of this case, the infringing activities of the Defendants constitute intentional, willful infringement in violation of Ripple Labs' rights under 15 U.S.C. §1114, and have caused and will continue to cause Ripple Labs immediate and irreparable harm if not enjoined.

51. Unless immediately restrained and enjoined by this Court under 15 U.S.C. § 1116(a) and (d) and the equitable powers of this Court, Defendants will persist in their activities, thereby causing Ripple Labs additional irreparable harm.

52. Ripple Labs has also sustained actual damages as a result of the Defendants' infringing activities in an amount to be ascertained at trial.

53. Based on Defendants' activities, this case qualifies for: a disgorgement of Defendants' profits, actual damages and treble damages, together with attorney's fees pursuant to 15 U.S.C. § 1117(b), or at the election of Ripple Labs, statutory damages pursuant to 15 U.S.C. § 1117(c).

**COUNT II: FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION PURSUANT TO 15 U.S.C. § 1125**

54. Ripple Labs hereby restates the allegations in paragraphs 1 through 46 above as if fully set forth herein.

55. Ripple Labs is the owner of the valid and protectable RIPPLE Trademark, as evidenced by the federal trademark registrations attached hereto as Exhibit 1.

56. Ripple Labs' use of the RIPPLE Trademark has been and continues to be in a way that affects interstate commerce.

57. Ripple Labs' use of the RIPPLE Trademark was prior to Defendants' unauthorized use of the Infringing Marks.

58. There is a likelihood of consumer confusion caused by Defendants' unauthorized use of the Infringing Marks.

59. Defendants' unauthorized use of the Infringing Marks was done knowingly, willfully, intentionally, in bad faith, and constitutes a violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60. Defendants' acts are greatly and irreparably damaging to Ripple Labs and will continue to be greatly and irreparably damaging to Ripple Labs unless enjoined by this Court, as a result of which, Ripple Labs is without an adequate remedy at law.

61. This case qualifies for a disgorgement of Defendants profits, Plaintiff's actual damages and treble damages together with attorneys' fees pursuant to 15 U.S.C. § 1117.

**COUNT III: UNFAIR COMPETITION PURSUANT TO CALIFORNIA'S BUSINESS AND PROFESSIONS CODE (SECTION 17200)**

62. Ripple Labs hereby restates the allegations in paragraphs 1 through 46 as if set forth fully herein.

63. The wrongful acts and practices described herein constitute unfair competition within the meaning of California's Business and Professions Code section 17200.

64. As a result of Defendants' unfair competition, Ripple Labs has been irreparably harmed and has lost money or property within the meaning of the statute.

65. Ripple Labs is entitled to preliminary and permanent injunctive relief to remedy Defendants' unfair competition, including but not limited to Defendants' effort to capitalize on Ripple Labs' goodwill.

66. Ripple Labs seeks all ancillary equitable relief that is necessary and appropriate to remedy Defendants' unfair competition.

**COUNT IV: UNFAIR COMPETITION PURSUANT TO COMMON LAW**

67. Ripple Labs hereby restates the allegations in paragraphs 1 through 46 above as if fully set forth herein.

68. Defendants' unauthorized and unlawful activities described herein have been and will be committed willfully and with full knowledge of the rights of Ripple Labs and with the intention of deceiving and misleading the public and of wrongfully misappropriating and trading upon the nationally recognized value of the goodwill and reputation associated with the RIPPLE Trademark and of benefiting from and depriving Ripple Labs of the benefits arising from the reputation and goodwill associated with Ripple Labs and the RIPPLE Trademark.

69. Ripple Labs has sustained actual damages and irreparable harm as a result of Defendants' wrongful conduct in an amount to be ascertained at trial.

70. Defendants' conduct is fraudulent, malicious, and oppressive, and otherwise qualifies for the imposition of punitive damages under California law.

**COUNT V: CYBERSQUATTING IN VIOLATION OF THE ACPA**

71. Ripple Labs hereby restates the allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

72. Ripple Labs' RIPPLE Trademark is valid, enforceable, and entitled to protection under the Lanham Act. Moreover, Ripple Labs' RIPPLE Trademark was a valid and enforceable trademark at the time of Defendants' registration of the Infringing RIPPLN Websites.

73. The Infringing RIPPLN Websites use the Infringing Marks, RIPPLE and RIPPLN. The Infringing Marks are confusingly similar to Ripple Labs' RIPPLE Trademark.

74. Defendants have registered the Infringing RIPPLN Websites with the bad faith intent to profit from them.

75. Defendants' activities violate the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).

76. Defendants' acts have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Ripple Labs' business, reputation, and goodwill. Ripple Labs has no adequate remedy at law because monetary damages are inadequate to compensate it for the injuries caused by Defendants.

77. Upon information and belief, Defendants' unlawful registration and use of the Infringing RIPPLN Websites has been intentional and willful.

78. Ripple Labs is entitled to injunctive relief, and also entitled to recover Defendants' profits, actual damages suffered by Ripple Labs and the costs of this action pursuant to 15 U.S.C. § 1117(a). Ripple Labs is also entitled to injunctive relief, including a Court order of forfeiture or cancellation of the accused domain names or the transfer of the accused domain names to Ripple Labs pursuant to 15 U.S.C. § 1125(d)(1)(C).

79. This case qualifies for a judgment of treble damages together with attorney's fees pursuant to 15 U.S.C. § 1117.

**PRAYER FOR RELIEF**

Plaintiff Ripple Labs prays for judgment in its favor as follows:

A. That Defendants, including its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with the Defendants be preliminarily and permanently enjoined from:

1. Using Ripple Labs' RIPPLE Trademark or any confusingly similar variation thereof, including but not limited to the mark, RIPPLN;

2. Passing off or falsely designating the origin of Ripple Labs' RIPPLE Trademark and from injuring Ripple Labs' goodwill and reputation;

3. Doing any other act or thing likely to induce the belief that the Defendants' services are in any way connected with, sponsored, affiliated, licensed, or endorsed by Ripple Labs;

4. Registering, using or trafficking in any domain name that is identical or confusingly similar to Ripple Labs' RIPPLE Trademark; and

5. Using or displaying the RIPPLE Trademark or any variation thereof, including without limitation the word mark RIPPLN, for goods or services in any location, circumstance or environment, including on the Internet, or as domain names, email addresses, meta tags, invisible data, or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Defendants with Ripple Labs.

B. That Defendants forfeit, cancel or transfer the www.rippln.com and www.startmyripple.com domain names to Ripple Labs.

C. That Defendants expressly abandon their trademark application(s) for the mark RIPPLN, which are pending before the USPTO.

D. That Defendants offer up for destruction all products and marketing collateral bearing the mark RIPPLE, or any confusingly similar variation thereof, including but not limited to the word mark RIPPLN, pursuant to 15 U.S.C. §1118.

E. That Defendants, in accordance with 15 U.S.C. §1116(a), be directed to file with this Court, and serve upon Ripple Labs within thirty (30) days after service of a permanent injunction, a verified report setting forth in detail the manner and form in which Defendants have complied with the permanent injunction.

F. That Ripple Labs recover its actual damages sustained as a result of Defendants' wrongful actions.

G. That Ripple Labs recover Defendants' profits made as a result of Defendants' wrongful actions, as set forth herein.

H. That Ripple Labs recover three (3) times its actual damages.

I. That this case be deemed an exceptional case under 15 U.S.C. §§1117 and that Defendants' be deemed liable for and ordered to reimburse Ripple Labs for its reasonable attorney's fees.

J. That Ripple Labs be awarded exemplary damages for Defendants' willful and intentional acts.

K. That Ripple Labs recover its attorneys' fees and costs of court.

L. That Ripple Labs recover such further relief to which it may be entitled and that this Court may deem just and proper.

### JURY DEMAND

Ripple Labs hereby demands trial by jury on all issues so triable as a matter of right.

Respectfully submitted,

By: _/s/ Jennifer Seraphine_____
Jennifer Seraphine (Cal Bar. No. 245463)
(seraphine@turnerboyd.com)
TURNER BOYD LLP
2570 W. El Camino Real
Suite 380
Mountain View, California 94040
Telephone: (650) 521-5930
Facsimile: (650) 521-5931

Todd M. Malynn (Cal. Bar No. 181595)
(tmalynn@feldmangale.com)
FELDMAN GALE, P.A.
Promenade West
880 W 1st Street, #315
Los Angeles, California 90012
Telephone: (213) 625-5992
Facsimile: (213) 625-5993

*Attorneys for Plaintiff Ripple Labs, Inc.*