Jennifer Seraphine (Cal Bar. No. 245463)
(seraphine@turnerboyd.com)
TURNER BOYD LLP
2570 W. El Camino Real
Suite 380
Mountain View, California 94040
Telephone: (650) 521-5930
Facsimile: (650) 521-5931

Todd M. Malynn (Cal. Bar No. 181595)
(tmalynn@feldmangale.com)
FELDMAN GALE, P.A.
Promenade West
880 W 1st Street, #315
Los Angeles, California 90012
Telephone: (213) 625-5992
Facsimile: (213) 625-5993

*Attorneys for Plaintiff Ripple Labs, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RIPPLE LABS, INC., F/K/A OPENCOIN, INC., A CALIFORNIA CORPORATION, <br><br> Plaintiff, <br><br> vs. <br><br> LACORE ENTERPRISES, LLC, A TEXAS LIMITED LIABILITY COMPANY; RIPPLN, INC., A TEXAS CORPORATION; AND TERRY LACORE, AN INDIVIDUAL, <br><br> Defendants. | Case No. 3:13-cv-5974-KAW <br><br> **[PROPOSED] ORDER OF PRELIMINARY INJUNCTION** |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** came on regularly for hearing on _____ in Dept. ___, before the Honorable _____. All parties were represented by their respective counsel.

After careful consideration of the evidence, all filed papers, as well as counsels' oral arguments, the Court finds as follows:

### FINDINGS OF FACT

### Jurisdiction And Venue

Plaintiff Ripple Labs, Inc. ("Ripple Labs") is a California corporation, with its principal place of business in San Francisco, California, doing business under its trademark RIPPLE throughout the United States and internationally.

Defendants LaCore Enterprises, LLC ("LaCore") and Rippln, Inc. ("Rippln") are Texas corporations residing in and having a principal place of business in Melissa, Texas. Defendant Terry LaCore ("Mr. LaCore") is an individual residing in Texas.

The Plaintiff and all Defendants are subject to this Court's personal jurisdiction and venue is appropriate in this Court.

### Plaintiff Ripple Labs and the Ripple Trademark

For many years, Ripple Labs has developed, maintained, and operated a successful currency exchange service that provides on-line, real-time currency trading, and cash management. Specifically, Ripple Labs facilitates the transfers of electronic cash equivalents and provides virtual currency exchange transaction services for transferrable electronic cash equivalent units having a specified cash value.

Ripple Labs is the exclusive owner of all rights, title, and interest in U.S. Trademark No. 4,453,543 for the word mark "RIPPLE: in connection with "Financial services, namely, providing secure payment options to members of an online community via a global computer network through the use of traditional currency and virtual currency" in international class 036, and U.S. Trademark No. 4,453,376 for the word mark "RIPPLE COMMUICATIONS" for "Financial services and financial transaction services, namely, providing secure commercial transactions and payment

options" in international class 036, as well as any and all common law rights and goodwill associated therewith (collectively referred to herein as, the "RIPPLE Trademark").

Under the RIPPLE Trademark, Ripple Labs offers services whereby individuals can create, credit, and disburse money—both real and virtual—to people within a peer-to-peer social network. This service acts as an alternative to the current on-line currency exchange services presently in existence by offering a truly decentralized exchange service and also providing a platform by which individuals may grant or extend credit to one another. The credit created under the RIPPLE Trademark has become a new form of digital currency. The evidence shows that the RIPPLE Trademark has been continuously used since 2004, first in the areas of computers and online communications, and more recently in connection with Ripple Labs above described virtual currency services. Indeed, Ripple Labs has expended a tremendous amount of time, effort and money to continuously and widely advertise and promote the RIPPLE brand of currency exchange services

Ripple Labs also owns all rights, title and interest in and to the URL domain names, http://www.ripple.com, http://www.ripple-project.org, and http://www.ripplepay.com (collectively, the "RIPPLE Domain Names") and all goodwill associated thereto. The RIPPLE Trademark has acquired additional goodwill through Ripple Labs' continuous and extensive use of the RIPPLE Domain Names.

**The Defendants' Infringing Activities**

The evidence establishes that the Defendants—using the identical mark RIPPLE and nearly-identical mark RIPPLN (the "Infringing Marks")—provide network marketing services, whereby Defendants compensate users monetarily and through value equivalents in the form of Defendants' own currency in connection with Defendants' social networking platform. Additionally, Defendants provide advertisement opportunities to third parties, and offer a payment system for sharing applications under the Infringing Marks, RIPPLE and RIPPLN. Defendants have been using the Infringing Marks in connection with one or more online platforms operated by the Defendants at the following websites: www.rippln.com, www.startmyripple.com, and www.ripplncommunicator.com (collectively, the "Infringing RIPPLN Websites").

[PROPOSED] ORDER FOR PRELIMINARY INJUNCTION         3         CASE NO. 3:13-cv-5974-KAW

Defendants describe their services as: "bring[ing] long-over due transparency to the social engagement business and has created a new monetary model for 'eyeball acquisition.'" Users of the Infringing RIPPLN Websites have to be "invited" or "referred" by friends to join the platform.

The evidence shows that there has substantial negative press associated with the Defendants, their Infringing Marks, and their Infringing RIPPLN Websites. Several websites and blogs have characterized the Defendants' network application as a "scam" and a "scheme." As such, the damage suffered by Ripple Labs is multiplied.

### Defendants' Wrongful and Infringing Conduct

The evidence establishes that Defendants commenced use of the identical mark RIPPLE, and also adopted the confusingly similar mark RIPPLN, long after Ripple Labs and its predecessors established its rights and goodwill in connection with the RIPPLE Trademark, and after Ripple Labs began using the RIPPLE Trademark in connection with its virtual currency services.

The evidence is that Defendants interchangeably use the marks RIPPLE and RIPPLN in relation to many of their activities. Furthermore, Defendants recently launched a new application called "RIPPLN Communicator," a program that further infringes Ripple Labs' rights, by allowing subscribers to keep in touch, share, and earn rewards (including Defendants' virtual currency). Public information about the Rippln Communicator application indicates that the application is a program for information exchange, including SMS messages, online chat messages, and digital media such as pictures.

The evidence further shows that Defendants' infringing services have and actually deceived consumers about the source of Defendants' services, and Defendants have wrongfully benefited from their improper association with the RIPPLE Trademark. Although Defendants have only recently started to use the Infringing Marks in commerce, there have already been at least a dozen documented instances of actual confusion with Ripple Labs' RIPPLE Trademark. The evidence presented makes it clear that actual confusion between the Infringing Marks and Ripple Labs' RIPPLE Trademark is rampant.

As evidenced by the repeated instances of actual confusion, Ripple Labs' and Defendants' respective services are both related and overlapping. Defendants encourage this confusion by

promoting and associating the Infringing Marks with Ripple Labs' services, specifically, currency exchanges and financial transactions, namely payment systems with real and virtual currency. In fact, Defendants' users and promoters suggest that RIPPLN's "incentivized sharing" concept (*i.e.*, getting paid for sharing), could be called "the new model of currency," thereby associating themselves with currency and monetary value.

Any Finding of Fact contained herein may be deemed to be a Conclusion of Law in order to carry out the terms and intent of this Order of Preliminary Injunction.

## CONCLUSIONS OF LAW

### Preliminary Injunction Standard

To obtain a preliminary injunction, a party "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, CCH-TLGD P 62069 (C.C.H.), 2012 WL 3563322, No. 12-16868 (9th Cir. Dec. 2, 2013) (quoting *Winter , v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). With respect to claims of trademark infringement, to establish a likelihood of success on the merits a party must show that it is "(1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." *Id*. (quoting *Grocery Outlet, Inc. v. Alberston's, Inc.*, 497 F.3d 949, 951 (9th Cir. 2007)). "Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm." *Id*. (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001)). Public policy concerns also favor the granting of an injunction when an infringing product is likely to cause consumer confusion. *Anti-Monopoly, Inc. v. General Mills Fun Group,* 611 F.2d 296, 300-02 (9th Cir. 1979).

### Likelihood Of Success On The Merits

Ripple Labs is likely to prevail on its Section 1114 and 1125 trademark infringement claims. Ripple Labs is the exclusive owner of the RIPPLE Trademark. A Certificate of Registration from the USPTO is *prima facie* evidence of a valid and protectable trademark. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).

Additionally, at an absolute minimum, Ripple Labs has proven by a preponderance of the evidence (throughout the concurrently-filed Larsen Declaration) that Ripple Labs "used the mark in commerce first." *Sengoku Works v. RMC Int'l*, 96 F.3d 1217, 1219-20 (9th Cir. Cal. 1996). Ripple Labs has thus established a likelihood of success on the merits regarding Ripple Labs' ownership of the marks at issue.

The standard for finding trademark infringement for a registered trademark, or alternatively under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is the same: namely, whether the defendant is using, in commerce, any false or misleading word or representation which is likely to cause confusion in the marketplace. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009); *Accuride International, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1532 (9th Cir. 1989). To evaluate the likelihood of confusion between two names, courts apply the eight-factor test set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), examining: (1) the strength of plaintiff's mark; (2) the proximity of the parties' goods or services in the marketplace; (3) the similarity of the parties' marks; (4) any evidence of actual confusion; (5) marketing channel overlap; (6) the type of goods and degree of care likely to be exercised by purchasers; (7) defendant's intent in selecting their name or mark; and (8) the likelihood of expansion of the parties' product lines. *Marlyn Nutraceuticals*, 571 F.3d at 877; *Accuride*, 871 F.2d at 1533-34.

The relative importance of each *Sleekcraft* factor is case-dependent, varying based upon the nature of the facts at hand. *One Industries, LLC v. Jim O'Neal Distributing, Inc.*, 578 F.3d 1154, 1162 (9th Cir. 2009). "Although some factors - such as the similarity of the marks and whether the two companies are direct competitors - will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of factors." *Brookfield Communs, Inc.,* 174 F.3d at 1054. Here, the most salient considerations are the actual confusion that has occurred, the strength of Plaintiff's mark, the similarity of the marks used by Defendants, market overlap, and Defendants' wrongful intent, all of which weigh in favor of granting preliminary injunctive relief.

[PROPOSED] ORDER FOR
PRELIMINARY INJUNCTION                          6                          CASE NO. 3:13-cv-5974-KAW

### 1. The Evidence Of Actual Confusion Favors An Injunction

The Ninth Circuit has made clear that evidence "that use of the two [disputed] marks has already led to confusion is persuasive proof that future confusion is likely." *Sleekcraft*, 599 F.2d at 353. Here, Defendants' use of the Infringing Marks has already caused confusion among users and potential users of the services Ripple Labs offers under its RIPPLE Trademark. The fact that actual users have been confused by Defendants' use of the Infringing Marks is compelling evidence that others are likely to be confused in the future. *Chronicle Pub Co., v. Chronicle Publications Inc.*, 733 F.Supp. 1371, 1377-78 (N.D.Cal. 1989).

"A showing of actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion," and supports entry of a preliminary injunction in this case. *See Color Me House, Inc. v. Discovery Communs., Inc.*, 2013 U.S. Dist. LEXIS 44234, 18-19 (W.D.Wash. March 27, 2013) (granting preliminary injunction where actual confusion shown).

Where, as here, "there is uncontroverted evidence in the record that there has been actual confusion as a result of Plaintiff and Defendant's use of virtually identical names," a Court may properly find in favor granting a preliminary injunction. *See GSC Logistics, Inc. v. Star Galaxy Logistics, Inc.,* C 09-5886 SBA, 2010 WL 690200, *3-4 (N.D. Cal. Feb. 24, 2010) (granting a preliminary injunction on the grounds that a "majority of the *Sleekcraft* factors, including two of the three controlling troika, support Plaintiff's claim that Defendant's use of a confusingly similar trade name is likely to cause-and indeed, has caused-confusion.") As such, this factor weighs in favor of injunctive relief.

### 2. The RIPPLE Trademark Is Strong And Well Known Nationwide

A trademark's strength is determined by viewing the mark in its entirety as it appears in the marketplace. *Id.* at 1058. The spectrum of protectability and strength for trademarks is divided into four primary types of designations: (1) coined, fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic. Arbitrary or fanciful marks are the strongest and deemed inherently distinctive and entitled to protection. *Id.* at 1059. The RIPPLE Trademark is a strong, arbitrary mark. The RIPPLE Trademark has also acquired secondary meaning and enjoys widespread recognition and is prominent in the minds of consumers.

### 3. Defendants Are Using The Identical Name RIPPLE And The Nearly Identical Mark RIPPLN

Similarity of marks is assessed "in terms of their sight, sound, and meaning." *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1392 (9th Cir. 1993) (citations omitted). The similarity of the parties' marks "has always been considered a critical question in the likelihood-of-confusion analysis." *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 n. 5 (9th Cir. 2000). In comparing the parties' marks, the court is required to focus on how each of the marks is perceived by the ordinary consumer in the marketplace. *Brookfield Communs, Inc.,* 174 F.3d at 1054; *Dreamwerks Prod. Group, Inc. v. SKG Studio,* 142 F.3d 1127, 1131 (9th Cir. 1998). The "greater the similarity between the two marks at issue, the greater the likelihood of confusion." *GoTo.com,* 202 F.3d at 1206. In making this comparison, "similarities [are] weighted more heavily than differences." *Brookfield Communs, Inc.,* 174 F.3d at 1054. Likelihood of confusion is even greater when an infringer uses the exact trademark. *GoTo.com,* 202 F.3d at 1206; *Kohler Co. v. Baldwin Hardware Co.,* 82 U.S.P.Q.2d 1100 (T.T.A.B. 2007).

In the instant matter, Defendants are using marks that are identical to the RIPPLE Marks. It is also clear that the sight, sound and meaning of the RIPPLN mark is so similar that this factor weighs in favor of a finding of a likelihood of confusion. A clear example of the similarity is the fact that Defendants adopt and use the marks RIPPLE and RIPPLN interchangeably to describe their services.

### 4. Defendants Intend To Expand Their Services

"A strong likelihood that either party may expand his business to compete with the other favors a finding of infringement." *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1394 (9th Cir. 1993). Defendants indicate in their advertising an intent to expand the scope of their services through the RIPPLN Websites. Further, Defendants are advertising in many of the same countries that Ripple Labs' services under the RIPPLE Trademark are available. *See Maxim Integrated Products, Inc. v. Quintana*, 654 F. Supp. 2d 1024, 1034 (N.D. Cal. 2009) (where the Court held that the likelihood of expansion of the parties' products internationally tips in Plaintiff's favor).

Defendants further advertise the recent launch of their new application software RIPPLN COMMUNICATOR, which is strikingly similar in sight, sound and meaning to Ripple Labs' RIPPLE Trademark.  With Defendants' launch of their new application software RIPPLN COMMUNICATOR, further inevitable confusion will ensue.  Therefore, this factor also tips strongly in Ripple Labs' favor.

### 5. Defendants Have Acted In Bad Faith

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354.  The Ninth Circuit has held that the Defendants' intent is a critical element.  *See Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1111 (9th Cir. 1999) ("intent to deceive is strong evidence of a likelihood of confusion").  "Where an alleged infringer chooses a mark he knows to be similar to another, one can infer an intent to confuse." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002).  "This factor favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." *Brookfield Communs, Inc.,* 174 F.3d at 1059.

Here, Defendants' bad faith intent is evidenced at least by the striking similarity between Ripple Labs' RIPPLE Trademark and the Infringing Marks.  Moreover, Defendants' conduct over the past year clearly indicates their intent to infringe Ripple Labs' brand and mark in an effort to unfairly profit from the goodwill earned by Ripple Labs' success in the market.  Notably, Defendants filed Intent-to-Use applications for the word mark RIPPLN.  Before Defendants began actual use of the mark, Ripple Labs filed their oppositions to those applications.  Defendants then knowingly proceeded to go forward and use both RIPPLN and also RIPPLE.  Defendants were thus aware of Ripple Labs and its RIPPLE Trademark prior to commencing use of the Infringing Marks, and have taken steps to create the appearance of a connection or affiliation between the two.  For example, in March 2013, prior to the official launch of the RIPPLN Websites, Rippln's Chief Marketing Officer attempted to add Larsen as a friend on LinkedIn.  Despite knowledge of Ripple Labs' RIPPLE Applications and Registrations with the USPTO, Defendants continued to pursue the registration of their applications with the USPTO and internationally.

These and other facts demonstrate Defendants' intentional decisions to use the exact same name "RIPPLE," and confusingly similar name "RIPPLN," in order to tread on Ripple Labs' goodwill and experience in the industry.  Accordingly, this factor weighs in favor of a finding of likelihood of confusion.

### 6. Defendants' Services Are Related To The Services Offered Under The RIPPLE Trademarks And Are Promoted In Overlapping Channels Of Trade To Overlapping Consumers

Services are related when the marks as used are related in the minds of the consuming public. *Sleekcraft,* 599 F.2d at 348 (services are related where the buying public would reasonably believe they came from the same source if offered under the same mark).  The more well-known a mark, the more likely that its use on noncompetitive products will cause consumer confusion.  *Sunbeam Furniture Co. v. Sunbeam Co.,* 191 F.2d 141 (9th Cir. 1951). Likewise, convergent marketing and sales channels increase the likelihood of confusion.  *Sleekcraft,* 599 F.2d at 353.

Defendants are actively using the Infringing Marks in connection with the Infringing RIPPLN Websites, and, as previously mentioned, in the short time Defendants have been offering their services, Defendants have received significant negative attention, publicity and notoriety. Notwithstanding this negative publicity, the services provided by Defendants under the Infringing Marks are unquestionably related to Ripple Labs' services, and are promoted through overlapping market channels.  *See, e.g., Palantir Technologies Inc. v. Palantir.net, Inc.,* No. C 07-03863 CRB 2008 WL 152339, at *5-6 (N.D. Cal. January 15, 2008) (goods and services related where companies both offered products and services to the computer software industry using identical marks).  Moreover, given Defendants' purposeful intent to link itself to monetary and currency exchange services, marketplace overlap is inevitable.  Thus, these factors weigh heavily in favor of both a likelihood of confusion, and injunctive relief.

### Ripple Labs Is Likely to Prevail On Its Unfair Business Practices Claims

In addition, Ripple Labs is likely to prevail on its Unfair Business Practices claims because Defendants are unfairly, fraudulently and unlawfully causing confusion among consumers. Section 17200 of the California Business and Professions Code makes actionable any business practice that

is unlawful, unfair or fraudulent. *Mortgage Elec. Registration Sys. v. Brosnan*, Case No. C 09–3600 SBA, 2009 WL 3647125, at *8 (N.D. Cal. Sept. 4, 2009) (where the Court found noteworthy that Defendants adopted an infringing name for its "sham companies"). Section 17200 imposes strict liability on defendants. *Id.* It is, therefore, not necessary to show that the defendant intended to injure anyone in order to prevail on a Section 17200 claim. *See Community Assisting Recovery, Inc. v. Aegis Ins. Co.,* 92 Cal.App. 4th 886, 891 (2001); *Rothschild v. Tyco Intl. Inc.,* 83 Cal.App. 4th 488, 494 (2000).

The unfairness prong of California's unfair competition law is intentionally broad, allowing courts the maximum discretion to prohibit new schemes to defraud. *Schnall v. Hertz Co.,* 78 Cal. App. 4th 1144 (2000). A business practice is unfair when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *See Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.,* 92 Cal. App. 4th 886 (2001), *rev. denied* (2002). In order to determine whether a business practice or act is unfair, courts examine the impact of the practice or act on its victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. *Emery v. Visa Internet Service Ass'n*, 95 Cal. App. 4th 952 (2002). In essence, courts weigh the utility of the defendant's conduct against the gravity of the harm. *See Klein v. Earth Elements, Inc.,* 59 Cal. App. 4th 965, (1997). Fraudulent business practices, on the other hand, may be based on any representations to the public that are accurate on some level, but will nonetheless tend to mislead or deceive. *See McKell v. Washington Mut., Inc.,* 142 Cal. App. 4th 1457 (2006). The unlawful business practices actionable under Section 17200 include any business practices that violate any law. Cal. Code Civ. Proc. § 1209(a)(8); *Farmers Ins. Exch. v. Sup. Ct.,* 826 P.2d 730 (Cal. 1992) (1992). In effect, Section 17200 makes a violation of any underlying law a per se violation of Section 17200. *Kasky v. Nike, Inc.,* 27 45 P.3d 243 (Cal. 2002); *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 973 P.2d 527 (Cal. 1999).

Here, Defendants continued their social media scheme under the names RIPPLE and RIPPLN, and pursued federal registration of the RIPPLN mark, despite their knowledge of Ripple Labs and its RIPPLE Trademark. Even if Defendants were not aware of the RIPPLE Trademark

[PROPOSED] ORDER FOR PRELIMINARY INJUNCTION     11     CASE NO. 3:13-cv-5974-KAW

prior to filing their own federal trademark applications, they were made aware shortly thereafter (through the opposition proceeding commenced by Ripple Labs), and have failed to cease their unlawful activities.

**Ripple Labs Has Suffered Irreparable Harm**

Ripple Labs has suffered irreparable harm and will continued to do so absent preliminary injunctive relief. The loss of control over the movant's name and reputation and loss of goodwill has consistently been held to constitute irreparable injury. *Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 724 (9th Cir. 1985). The Ninth Circuit has recognized that the potential loss of good will or the loss of the ability to control one's reputation may constitute irreparable harm for purposes of preliminary injunctive relief. *Mortgage Elec. Registration Sys.,* Case No. C 09–3600 SBA, 2009 WL 3647125, at *8 (*citing Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); *Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 526 (9th Cir. 1984) (finding irreparable injury where "district court could reasonably have concluded that continuing infringement would result in loss of control over Apple's reputation and loss of good will"). The loss of good will and damage to reputation are considered irreparable due to the inherent difficulty in quantifying such loss. *See Rent-a-Center, Inc. v. Canyon Television & Appliance*, 944 F.2d 597, 603 (9th Cir. 1991); *SunEarth, Inc.*, 846 F. Supp. 2d at 1083.

Here, Ripple Labs established a name and reputation for the RIPPLE Trademark. Ripple Labs is known within the industry and other major publications as the "next big thing" in virtual currency. Furthermore, all monetary exchange systems "innately share a fundamental risk" and require a significant amount of consumer trust. Andrew J. Zammit, *Virtual Currencies – A Question of Trust*, CSB Advocates, Mar. 11, 2013, http://www.csb-advocates.com/malta-law-articles/virtual-currencies-question-trust. Indeed, many monetary exchange systems are not regulated and do not involve any kind of supervision or oversight. *Id.* Thus, it is self-evident that any negative impact to this trust is irreparably damaging to the system. It is therefore undisputable that the association of

the RIPPLE Trademark with an alleged "pyramid scheme" and untrustworthy platform is particularly harmful to Ripple Labs' established reputation and goodwill. Current or potential customers may wonder, and do wonder, based on the evidence presented if Ripple Labs is endorsing the Infringing RIPPLN Websites, or otherwise changed its practices and procedures in a way that would render Ripple Labs' services less desirable or reliable, or even subservient to the newly formed company now bearing the same name and mark.

Defendants' marketing under the Infringing Marks has already led to actual consumer confusion in the market. Moreover, Ripple Labs has shown a continued likelihood of confusion in the relevant market between the RIPPLE Trademarks and the Infringing Marks. Current or potential customers' association of Ripple Labs with another entity, particularly the Defendants, directly harms the goodwill painstakingly acquired over years in the market and further eliminates the ability of Ripple Labs to control its own reputation and good will. Both the loss of goodwill and the loss of control of goodwill constitute irreparable harm that cannot be avoided absent a preliminary injunction. *Apple Computer* 725 F.2d at 526; *Rent-a-Center* 944 F.2d at 603. Accordingly, given the likelihood of confusion that will result to consumers, as well as the resulting loss of control over Ripple Labs' reputation, goodwill, and the RIPPLE Trademark, Ripple Labs is likely to suffer irreparable harm absent preliminary injunctive relief.

**The Balance Of Hardships and Public Interest Strongly Favor Injunctive Relief**

The balance of the equities and public interest weigh heavily in favor of a preliminary injunction against the Defendants. In determining whether to grant injunctive relief, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987).

Ripple Labs has expended substantial time and expense developing the quality, reputation, and goodwill associated with the RIPPLE Trademark. As discussed above, Defendants' acts are causing immediate, irreparable harm to Ripple Labs that urgently requires injunctive relief. If Defendants are permitted to continue their illegal practices, Ripple Labs will continue to suffer substantial damage to its reputation as well as losses to its revenue and erosion of its customer base. This amounts to an enormous hardship on Ripple Labs.

On the other hand, Defendants have no lawful right to a website built from intellectual property they knowingly stole from Ripple Labs. As such, issuance of a preliminary injunction will impose no legitimate or legally recognizable hardship on Defendants.

Here, both equity and the public interest clearly weigh in favor of the requested relief. The basic function of a preliminary injunction is to preserve that status quo pending a determination of the outcome on the merits. *Chalk v. U.S. Dist. Court Cent. Dist. of Cal.*, 840 F.2d 701, 704 (9th Cir. 1988); *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). The "status quo" in this case is the situation as it existed before Defendants began using the Infringing Marks in the United States, and prior to Defendants' entrance into the marketplace and promotion and use of the Infringing Marks. *GoTo.com*, 202 F.3d at 1210.

In addition to the equitable goal of maintaining the status quo, the Lanham Act's status as a consumer protection statute further weighs heavily in favor of preliminary injunctive relief under § 43(a):

> Since § 43(a) was passed as a consumer protection statute, the courts are not reluctant to allow a commercial plaintiff to obtain an injunction even where the likelihood of pecuniary injury to the plaintiff may be slight. . . . An injunction protects the consumer from continued false advertising. Money damages, on the other hand, primarily aid only the competitor, and he is required to satisfy a higher standard of proof as to injury.

*Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*, 633 F.2d 746, 753 n. 7 (8th Cir. 1980) (citing J. McCarthy, Trademarks & Unfair Competition § 27:5A, at 250-251 (1973)).

The public is best served by preventing the likelihood of confusion caused by Defendants' infringing use of the RIPPLE Trademark. Accordingly, this factor also weighs in favor of the preliminary injunctive relief requested by Ripple Labs.

### Bond Requirement

Rule 65 of the Federal Rules of Civil Procedure requires the movant in a preliminary injunction proceeding to provide security in an amount the court considers proper to cover damages sustained by a party that is wrongfully enjoined, unless not warranted under the circumstances. Fed. R. Civ. P. 65(c); *see also Matek v. Murat,* 862 F.2d 720, 733 (7th Cir. 1987) (damages under injunction bond are limited to those actually and proximately resulting from the effect of the

injunction itself as opposed to litigation expenses independent of the injunction); *Mortgage Elec. Registration Sys.,* Case No. C 09–3600 SBA, 2009 WL 3647125, at *8.

In this instance, the bond should be nominal or nothing at all because entry of a preliminary injunction will not harm the Defendants.  It is well within the Court's discretion at this juncture to require a nominal bond or no bond at all.  *See GoTo.com,* 202 F.3d at 1211 (ordering a nominal bond, noting that Rule 65(c) "places within the discretion of the district court the amount of the bond"); *Jorgensen v. Cassiday,* 320 F.3d 906, 919 (9th Cir. 2003) (nominal bond or no bond acceptable where there was no realistic likelihood of harm to defendant from enjoining its conduct). Defendants simply have no right to cause marketplace confusion and harm Ripple Labs' reputation by using the RIPPLE Trademark, and therefore, this Court should, at a minimum, require Ripple Labs to post a nominal bond during the pendency of its injunction.

Any Conclusions of Law contained herein may be deemed to be a Finding of Fact in order to carry out the terms and intent of this Order of Preliminary Injunction.

These Findings of Facts and Conclusions of Law are preliminary in nature and subject to final proof and final showing by the parties.

Based on the foregoing Findings of Fact and Conclusions of Law, the Court hereby

ORDERS AND ADJUDGES as follows:

A. That Defendants, including its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with the Defendants are PRELIMINARILY ENJOINED from:

1. using Ripple Labs' RIPPLE trademark or any confusingly similar variation thereof, including but not limited to the mark, RIPPLN;

2. diluting, blurring, passing off, or falsely designating the origin of Ripple Labs' RIPPLE trademark and from injuring Ripple Labs' goodwill and reputation;

3. doing any other act or thing likely to induce the belief that the Defendants' services are in any way connected with, sponsored, affiliated, licensed, or endorsed by Ripple Labs;

    4. registering, using or trafficking in any domain name that is identical or confusingly similar to Ripple Labs' RIPPLE trademark, including but not limited to www.rippln.com, www.startmyripple.com, and www.ripplncommunicator.com; and

    5. using or displaying the RIPPLE trademark or any variation thereof, including without limitation the word mark RIPPLN, for goods or services in any location, circumstance or environment, including on the Internet, or as domain names, email addresses, meta tags, invisible data, or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Defendants with Ripple Labs.

    B. Defendants, their officers, directors, employees, agents, and all other parties acting in concert with them, are PRELIMINARILY ENJOINED from destroying any electronically stored information that may contain evidence relevant to this action.

    C. This Order of Preliminary Injunction is conditions upon Progress posting an injunction bond in the amount of $_____ with the Clerk of this Court.

    11. This Order of Preliminary Injunction shall be binding on Defendants and any person(s) acting in concert with them who is served a copy of this Order of Preliminary Injunction.

IT IS SO ORDERED.

Dated: December \_\_\_, 2013.

By:_____

United States District Judge